So you may proceed. Good morning, Your Honor. Thank you. Deborah Birnbach for appellant Merrimack Pharmaceuticals. Your Honor, the cross motions for summary judgment in this case were clear that none of the facts were in dispute. Merrimack Pharmaceuticals, a biotechnology company with a drug in Phase II clinical trials for autoimmune disease, MS, and other drugs in development for cancer, spends all its money on R&D, does not have a marketable product, and has no sales. It's raised its money over time through venture capital investors who have financed the company through sophisticated preferred stock instruments. Plaintiff owns the redeemable Series A preferred stock. He acquired it through a series of transactions, and that stock has a redemption provision at the heart of this case. The redemption provision provides that if the net worth of Merrimack, as determined in accordance with generally accepted accounting principles, and as shown on the balance sheet, is greater than $5 million, the plaintiff has a right to redeem his stock. Both of those prongs have to be met. In other words, it has to be a net worth of greater than $5 million, as shown on the balance sheet, and as determined in accordance with GAAP. And what's at the heart of this case, Your Honor, is that GAAP must be given deference in the accountants that help prepare the financial statements and in interpretation. The PwC independent auditors who audited Merrimack's financial statements must be given deference. This is the Thor Supreme Court case, Thor Power Tool v. Commissioner of Internal Revenue. Well, now, Judge Shub was not persuaded, and he seems to rely, among other things, on concept 6. Why don't you address that? Sure. Judge Shub, Your Honor, erred in taking his own interpretation of GAAP rather than that of the experts, rather than that of the independent auditors who certified that the financials were prepared in accordance with GAAP. In other words ---- Let me interrupt for just one second. There is nothing in the accountant's statement that directly addresses the net worth issue. Is that correct? In other words, you're still interpreting what Price Waterhouse did in its annual audit. No, Your Honor, you're not, because the contract provision says, as shown on the balance sheet, and shareholders' equity is net worth. There are numerous cases. We've cited 10 in our brief in footnote 6, including two of this Court, where net worth and shareholders' equity are synonymous, are treated as synonymous. With the stuff that's in the mezzanine. Well, exactly, Your Honors. What do you do with the stuff that's in the mezzanine? That's the question here. I mean, that's why you have a question of what is, what are the aspects. What you do with the things in the mezzanine that have characteristics of both debt and equity is directly addressed by GAAP and the SEC rules. And what GAAP says is that you may not combine it into shareholders' equity. The EITF, which is from FASB. Isn't it really equity? It's just not permanent equity? It's just there for a period of time? It is exactly what the balance sheet requires it to be called, which is redeemable preferred stock. And in fact, it may not be titled equity under the appropriate GAAP rules. It may not be entitled equity, but isn't it really equity? It's not permanent equity? No, Your Honor. I submit it's not. And in fact, the only GAAP authorities that do address it, the EITF D-98 of the FASB, says that it must be not combined with equity, and in fact says that because of the very reason at issue here, which is that the preferred shareholders can essentially call it back, it would be misleading to combine it with equity. And because of the characteristics of it, like debt, you may not combine it with equity. So if you look at the words of the EITF — Why do you say the characteristics of it look like debt? The characteristics that look like debt are the fact that a majority of the board at all times, it's undisputed, could vote to redeem the Series B preferred stock. And therefore, they could call it back. Presenting it in the residual interest, in the net worth, in the shareholders' equity, would be misleading non-GAAP accounting because it does not convey the principles of GAAP of conservatism. It does not convey transparency. It gives the shareholders the idea that it's in the residual when it must not be presented in the residual. Isn't net worth when the total assets — you deduct the total liabilities from the total assets? Isn't that the definition of net worth that we should look at? And is it really that different than your definition? And isn't that what's contained in Black's Law Dictionary and what is accepted traditionally as the definition of net worth? No, Your Honor, it's not. It's accepted as the definition of net worth when there's nothing else to consider on the balance sheet. In other words, in the cases that you may have seen that used, there are cases that always say shareholders' equity, the residual is net worth. If there's nothing else on the balance sheet — the world is not black and white. The world contains gray. And the SEC has said, with respect to this precise security, this security that's redeemable preferred stock, the EITF D-98 says you may not combine it with equity. And the reason it says that is that it would be misleading to shareholders. It specifically uses this situation as an example in the EITF D-98. It specifically says that when you have a board that can control and redeem the shares — that's the first example cited in the EITF — that those shares must be considered outside of permanent equity, outside of shareholders' equity. Well, what about these characteristics? Tell me whether they point toward equity or liability. The fact that the holders of the Series B stock have voting rights, the fact that they have the power to elect one board member, the fact that they have preemptive rights — right to acquire new shares to prevent dilution — which way do those characteristics point? Those characteristics are not relevant, but can be considered to be of debt or equity depending on the obligation, whether it can be redeemed. In other words, those characteristics can be present in both a debt security and an equity security, but in the accounting literature and under GAAP, and plaintiff's purported expert did not contest this, the presentation that Merrimack used is appropriate under GAAP. And in fact, the way the contract provision is written, it's as shown on the balance sheet and as determined in accordance with GAAP. Well, under Supreme Court precedent in Thor, the district court has discretion only to look if there was an accounting treatment that must be used outside of the one used. It acknowledges that there are multiple presentations sometimes available under GAAP. It's up to the management of the issuer of the financial statements to choose one. And respectfully, Your Honor, as long as Merrimack's balance sheet presented that residual interest, that shareholder's equity, that net worth in accordance with GAAP, plaintiff, even if he had an alternate presentation that didn't violate GAAP, would not be able to redeem his shares. However, you asked about Con 6, Your Honor. Con 6 would say, and as Judge Shub indicated in his opinion, that a liability is defined as claims to the entity's assets by other entities and once incurred involve nondiscretionary future sacrifices of assets that must be satisfied on demand at a specified or determined date or on occurrence of a specified event. Non-discretionary. That certainly doesn't describe the Series B, does it? No. It says nondiscretionary, meaning on occurrence of a specified event. So in other words, that does describe the Series B because if the board votes to redeem, the company does not have discretion and must redeem. But that's entirely within the discretion of the board. Right, Your Honor. You're absolutely correct. And GAAP addresses that. There are mandatorily redeemable preferred stocks and there are conditionally redeemable. Once the condition is satisfied. Mandatory points toward liability, nonmandatory points toward equity. No, Your Honor. It doesn't, in fact. In fact, GAAP requires you and does not allow you to combine with equity a conditionally redeemable preferred stock. And the reason is, and this is what the SEC says, is that the commission thinks it's very important to highlight for shareholders redeemable securities that are not within the control of the issuer. In other words, because a majority of the board at all times, it's undisputed, could vote to redeem this stock, and it doesn't let accountants, and it's expressly described in the EITF, accountants should not be engaged in measuring probability. Is it likely, how might the board vote? It is irrelevant. For purposes of GAAP, the accountants must, for purposes of transparency and conservatism, not portray that conditionally redeemable preferred stock as part of equity. And in fact, because the facts here fit the exact example in the first example of the EITF, the FASB's pronouncement on this precise issue, it is not allowable as a GAAP presentation to put this in equity. What about FAS 150? How much weight does that carry? And doesn't, isn't that at a higher level than this CON 6 regulation? No, it's not a higher level than CON 6. CON 6 is a high level, but it's definitional. It says, this is what a liability is, which, by the way, Judge Shebb recognized, includes redeemable securities on an occurrence of an event. Let's go there. FAS 150 came into effect for balance sheets for nongovernment entities after December 31st, 2003. And what it says So it's not applicable to the December 31st, 2001 balance sheet at issue here. However, it does add support to Merrimack's argument, because what it said was, within the scope of 150, if you have a mandatory redeemable security, that must be considered a liability. It expressly did not address conditionally redeemable preferred stock like the Series B. It said that's out of scope. And it went further to say that the accounting series release 268 that we cite continues to apply to securities not within the scope of 150. So what the district court missed, Your Honor, is, and he did it by misquoting, unfortunately, a portion of But it reclassified. I'm going to interrupt you. It reclassified, didn't it? In other words, No. It took them from the mezzanine and said you must call them a liability. It left in the So doesn't that mean it was not a liability before it was reclassified? Doesn't that mean it was Exactly. And that's what 150 said. Didn't it mean that once it was reclassified as a liability before reclassification, then wasn't it part of the equity? Absolutely not. Because it acknowledged that accounting series release 268 and the SEC's view still hold, which is you may not put those in equity. There are three things here, not two. And calling assets minus liabilities net worth simply ignores the fact that these sophisticated instruments are on the balance sheet. And the SEC and the FASB have addressed these quasi-instruments precisely by having SEC authority, by having FASB authority in the EITF on point with a scenario described that is this security that says you may not put it in the residual. You may not put it in stockholders' equity. And the reason they describe is a reason that shareholders will be misled. I submit, Your Honor, that I'd be in court defending a suit against misleading financial statements if Merrimack put in its residual a security that can be called back at the will of a majority of the board at any time. And that's why these investors put such provisions in. They take on a lot of risk with biotechnology companies, but they control the money. And they can take it out of the company if they choose, which means you may not put it in the residual. What is your best argument, then, that this is equity? My best argument, Your Honor, is that as shown on the balance sheet, what number are we talking about? We're talking about shareholders' equity. Numerous cases, including two in this Court, Howard v. Everex, Nelson v. Sirwald. We pulled the balance sheets from the SEC filings, and they're in the record. Those talk about net worth and shareholders' equity. Plaintiff's complaint talks about shareholders' equity. In paragraph 13, he says, Merrimack's balance sheet reflected a negative $2.4 million shareholders' equity net worth and should have reflected a net worth of more than $5 million. So once we're talking about shareholders' equity, the only issue in this case is, was that shareholders' equity presented in accordance with that? Okay. Counsel, why don't we hear from the other side? You have plenty of time to respond. Good morning, Your Honors. Bill Warren from Downey Brand in Sacramento. I represent my client, Al Boldt. He's present with me here today. Opposing counsel has essentially spent 90 percent of her time with you here this morning confusing the issue. With all due respect to her and to this Court, the issue is, what is the net worth as shown on this balance sheet? And there are some black and white issues in this case, which the district court saw immediately and wrote down in a very, very thorough 16-page opinion. Here are the black and white issues. My client signed a stock agreement that specifically states that he has a right to redeem his shares at $10 per if, in fact, the balance sheet, read in accordance with GAAP, reflects a net worth in excess of $5 million. It does. The district court looked at that balance sheet, provided that balance sheet in its decision, subtracted, in a black and white world, liabilities from assets, and found that the net worth of this company was well over $5 million. Once you get there, it's also black and white that Merrimack must redeem, and they haven't, notwithstanding the fact that my client did everything that he was supposed to do with respect to asking and writing for that redemption in March of 2001. Well, Ms. Birnbach emphasizes the audit report by Price Waterhouse and suggests that that is not only, we should defer to it, but that controls. We have no issue with the audit report. And the argument she is making is an effort, maybe even not intentional, but it is a distraction from the issues here. What happened with the balance sheet was occasioned because of various SEC pronouncements that require Merrimack to list contingently redeemable preferred stock in a way that's not specifically under equity, but is referenced in the mezzanine. There are cases that equate stockholder equity with net worth. But those cases are simple in that they do not deal with situations where there are contingently redeemable preferred shares. None of those cases, and I've looked at every single one, and the Court did as well, none of those cases deal with this situation. And in this situation, the Court deemed that in a situation where you've got a contingently redeemable preferred share, and it's listed in the mezzanine for SEC purposes, that is a presentation issue. That is not a measure issue. The measure issue in this case is what do you get if you take the assets of the company, subtract the liabilities? What is the net worth? And that is what the definition that you're asking us to apply here. Yes, it is, Your Honor. Is that the black and white definition? Yes, it is. But it's more than that. The argument is nuanced for a number of reasons because we do have to address the fact that, for instance, Merrimack is relying on IAS 32, which is an international accounting standard for the proposition that with contingently redeemable preferred shares, you list them as liabilities. That is not the case in this country. That is not GAAP standards. GAAP specifically states that if you've got contingently redeemable preferred shares, those shares have to be accounted for as equity in the context of finding out what the net worth of the company is. There is no reference in their briefing to this Court of some of the most important language in FAS 150. And the question was asked, doesn't that take precedent? Isn't that at the top of the order? That was my understanding, that FAS 150 takes precedent over any of these other regulations. Your Honor, it absolutely does. I was surprised at the response to that. The statement on Auditing Standard 69, SAS 69, is the only document, and it is promulgated by the AICPA, is a document that sets forth a hierarchy. What are we to look at in order to figure out what all these pronouncements mean with respect to GAAP? It specifically says that there is nothing more important to your determination or to accountants that practice in this field, nothing more important than the FAS pronouncements. We have an FAS 150. Now, the position taken by Meramec is that doesn't really apply here because that came out after March of 2001. But what's relevant about that particular pronouncement is it holds the line on everything that was said before and addresses one issue, and that issue is, well, it may be a few more issues, but the issue that's relevant to this case is how do we deal with mandatorily redeemable preferred shares? And the FAS pronouncement specifically states, if in fact shares, instead of being contingent, are suddenly mandatory at that point in time, those shares are considered liabilities. But that same pronouncement says everything we've done in the past stays the same. And the appendices specifically state, and they've been completely ignored in this oral argument and in their paperwork, the appendices specifically state exactly what's on point here today. B64 in the appendices state, when a contingently redeemable instrument becomes mandatorily redeemable, that instrument should be reclassified as a liability. So what does that mean? Reclassified as a liability means that prior to its reclassification, it is considered an asset of the company for purposes of determining net worth. B78, I'm sorry, A7 in the same appendices says, if the event has occurred, the instrument is reclassified as a liability. So what FAS 150 states, and it sits at the very top of the hierarchy, is if you've got a contingently redeemable preferred share, that particular share is a part of the company's assets. You take liabilities from that measurement, and you come up with net worth. I take it Concept 6 is fully consistent, if not reinforcing, on FAS 150? Your Honor, Concept 6 is an interesting pronouncement. Judge Shub looked at that pronouncement and then a subsequent pronouncement and said, it doesn't matter because they're talking about ownership, in the sense of ownership. I read Concept 6 as confusing, but it is on the lesser standard with respect to the hierarchy in terms of figuring out what gap means. And it is ambiguous in terms of what it says. It's a very strange piece of language. Under Concept 6, we have to see, well, does it have more qualities as an asset or more qualities as a liability? And you have to go back and forth and do a weighing process under Concept 6, as opposed to 150, which you can draw an inference that anything that's not mandatorily redeemable, which is a liability, is equity. Arguably, but in this particular case, FAS 150 is right on point. FAS 150 attacks head-on the question of how you handle in a balance sheet in terms of measuring net worth. Not presentation for SEC purposes, but in terms of measuring net worth, what do you do with preferred shares? If they are contingent and once they become mandatory. FAS 150 says, once they become mandatory, they are liabilities. But it also says, FAS 150 says, this has not changed what we've done in the past. Only when they become mandatorily redeemable do we reclassify these shares as liabilities, as opposed to assets. Now, Merrimack has spent a lot of time talking about stockholders' equity, and they've equated stockholders' equity with net worth. But that's not the issue here, because all of the cases that are cited, and we don't quibble with them at all, and either did Judge Schub. All those cases are dealing with simple situations where there's not a mezzanine financing instrument. This particular case has a mezzanine instrument, which FAS 150, which sits at the top of the hierarchy, specifically defines by implication through the appendices as an asset, which must be added to the calculation. Now, the contract that my client is insisting upon exercising here, which has not been exercised since his request, specifically says, you look under GAAP at the balance sheet, and what does the balance sheet show? Merrimack wants to say, well, it shows what we want it to show. It shows that stockholders' equity is less than $5 million, so it's too bad. They can't do that. We don't quibble with the fact that the SEC says, you've got to list these types of securities, the Series A and Series B, in the mezzanine. We don't quibble with that, but that's not the issue of net worth. Nothing that Price Waterhouse did addressed net worth in the balance sheet. That's not even the function of the balance sheet. The function of the balance sheet is not to tell us what the net worth of the company is. It's to reflect the instruments, the financial instruments of the company. And so Judge Shub looked at the balance sheet and said, let's take one step behind this and peer into what we have to peer into under Section 5.2 of the Stock Agreement and said, now, what is net worth? Then you go back to GAAP, and it's very, very clear that there are three types of instruments, assets, liability and equity. He took the assets of the company as listed on the balance sheet. He deducted the liabilities. He found that it was greater than $5 million. He decided for my client. If Merrimack is correct that these particular shares, the Series B shares, are truly liabilities, they would have listed those liabilities, that particular instrument, as a liability in its balance sheet. It didn't do it for a reason, because they're confusing presentation pursuant to SEC pronouncements with measurement of net worth. But don't they have to list it this way? I mean, doesn't it have to be listed on a mezzanine portion? Yes, Your Honor, they do. We have no problem with that. What they're doing, though, is confusing the issue. It's a very complicated series of promulgations that gets to that particular point. But we don't have to get there. They want to, so as to deny my client his rights. But we don't need to get there, and we shouldn't. We have no quibble with that. The SEC has got its presentation requirements. They comply. That's not the question in this case, though. She spent 90 percent of her effort and time speaking about that particular issue, but it's an irrelevancy. And Judge Shub's decision was correct, well-reasoned, and we would ask that you affirm it. Roberts. Thank you, counsel. Ms. Bernbach, you have some reserve time. I respectfully disagree with what the district court did. And what the district court did was expressly say that, and this is on the record, on page 465, tab 29, Merrimack's argument that the Series B shares should be classified outside equity is an argument against generally accepted accounting principles. The judge also said that it wasn't the complete representation of equity in all types of shares or the complete picture of all shareholders' equity at pages 9 to 11. So what the district court did was say that Merrimack's presentation of shareholders' equity was violative of GAAP. And he did that by substituting his own interpretation. He looked at Con 6 and said, on its face, Con 6, because in the definition of liability included items that must be redeemed on an event occurring, would seem to end the story. He furthered that analysis by doing his own research and pulled up an additional accounting authority that was purportedly relevant, cited by neither party, that plaintiffs' appellees' counsel has still not gotten behind on this appeal, because on the face of it, and this was our motion to supplement the record, we included the pronouncement that the district court cited, it has no authority. It was tentative, and it doesn't address this issue. It addresses a different security. What is very concerning for auditors and for issuers who rely on GAAP in this case is that it is simple. There's no distinction between measurement and presentation in this case. Measurement is simply the dollar value. That's not in dispute. No one disputes the negative $2.4 million line item. The measurement in the accounting literature refers to how you measure, do you credit, do you debit, what is the dollar value. The sole issue in the contract provision is as determined in accordance with GAAP and as shown on the balance sheet. So if you take a balance sheet prepared under GAAP and it shows shareholders' equity, the residual net worth of negative $2.4 million, you win. The only way you get to a different conclusion is you do what Jeb Shubb did, which is he said he disagreed with the classification of the Series B outside of the shareholders' equity and thought that that argument is an argument against generally accepted accounting principles. Well, that's simply incorrect. He misinterpreted 150, which is very important and controlling for two things. Balance sheets after December 2003 and mandatorily redeemable securities. 150 on its face applies to three securities. It expressly carves out of its scope. No. Excuse me, counsel. Maybe I misunderstood what you said in your opening remarks, but my notes say that you said that 150 only applies after December 3103 and is not applicable to this case? To the balance sheet, which is December 31, 2001, at issue here. In other words, it could not possibly have been part of GAAP when it wasn't yet in existence. But you just said it was controlling. No, no, no. I said it's controlling for mandatorily redeemable. I'm sorry if I misspoke. Securities after December 2003. Can't we look at it for guidance? So it's controllable after this date. Can't we look at it for guidance, which is what the plaintiff said? We can look at it for guidance, but it's not what's binding under GAAP. And in fact, case law in this circuit and auditing standard 411.09, which is at 276 of the record, expressly state, and this is the Providence Hospital of Toppendish v. Shalala case in the Ninth Circuit, 1995, that a GAAP source closer on point, dealing with the precise issue, is more persuasive than a purportedly senior source. In this case, we don't have a senior source even on point because 150 didn't come into effect until after December 2003. And in its scope, it doesn't deal with this security. It doesn't deal with the contingently redeemable ones, only the mandatorily redeemable ones. It says so in its scope. So. But if it's not mandatorily redeemable. It's conditionally redeemable. It's conditionally redeemable. And before that, before 150. Right. But the mandatorily redeemable stock was conditionally redeemable stock and therefore equity. It was equity before it became a liability. No, no, no. There are two different types of things. Mandatorily redeemable and conditionally redeemable. Since 1979, under FASB's EITF D-98, as explained by the SEC in its accounting series release, must be outside of shareholders' equity. 150, when it came in for things after 03, said that the mandatorily redeemable ones must be called liability. And then it said, I agree with my opponent, that in the appendix, it said that it doesn't change the classification of the conditionally redeemable because those are out of scope. And those are not allowed to be classified as equity. You cannot simply ignore the sophisticated instruments that exist today because CONSIX was written 40-something years ago in black and white terms. Those instruments must be dealt with and GAAP does deal with them. What Judge Shub did, unfortunately, was to do his own GAAP research and not give the deference. GAAP is complicated. And the Supreme Court has said that it is not a canonical set of rules in Thor and you have to give deference, therefore, to the auditors. So what Judge Shub did was to take erroneous interpretations based on his own, as he understood, but he specifically reasoned his opinion. I agree it's long, but the reasoning is faulty because the reasoning expressly said that it was violative of GAAP. He had contradicting sentences in the opinion. In one place, he said they agreed that the balance sheet may have been prepared under GAAP. In another, he said not including the series B in shareholders' equity was violative of GAAP. Thank you, counsel. Your time has expired. Thank you very much. The case just argued will be submitted for decision. And we will hear argument next in R.B. versus the Napa Valley School District.
judges: Hall, O'scannlain, Gonzalez